UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAP WORLDWIDE, LLC, a Delaware limited liability company,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ERNEST ANTHONY BECKER aka TONY BECKER, an individual, and DOES 1-25, inclusive,<br><br>　　　　　　Defendants. | Case No. CV 10-04903 DMG (JCx)<br><br>**ORDER RE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

This matter is before the Court for hearing on July 12, 2010 on the Order to Show Cause ("OSC") Re Preliminary Injunction. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## I.

## PROCEDURAL HISTORY

On July 2, 2010, Plaintiff TAP WORLDWIDE, LLC filed (1) a complaint in this Court seeking declaratory judgment and damages for copyright infringement, violation of the Computer Fraud and Abuse Act, violation of the Uniform Trade Secrets Act, and conversion; and (2) an application for a temporary restraining order ("TRO") and OSC re preliminary injunction. Following a hearing on that same day, this Court issued a TRO

1 and OSC re preliminary injunction requiring Defendant ERNEST ANTHONY BECKER
2 to appear on July 12, 2010 to show cause why a preliminary injunction should not issue.

## II.

## FACTUAL BACKGROUND

Plaintiff is in the business of manufacturing and selling off-road parts and accessories. Plaintiff is not in the business of developing or selling software products. In 2003, Defendant was hired to manage Plaintiff's export operations, a position he held until June 25, 2010. During the time he was employed with Plaintiff, Defendant developed a software program designed to expedite processing of export shipments. According to Defendant (and not controverted by Plaintiff), "[t]his is an internet based product where any company can become a member and for a monthly fee [use all the benefits of this software]. Such benefits include the ability to fill the government and other forms which presently are being completed by hand or otherwise." (Decl. of Ernest Anthony Becker in Opp'n to App. for TRO and Prelim. Inj. at 2, filed 7/7/2010, ("Becker Decl.").) [Doc. #18].[1] Plaintiff asserts that it "was unaware of the existence of the Software." (Pltf's Memo of Pts and Auth in Supp of App for TRO and OSC Re Prelim Inj., filed 7/2/2010) [Doc. # 4]. According to Defendant (and not controverted by Plaintiff), "[he] did not spend any of [his] working hours on either doing the market research or developing the software. All the time spent has been off working hour [sic].

---

[1] The Court notes that a clerical error occurred at the time of filing Defendant's Memorandum of Points and Authorities in Opposition to Application for Temporary Restraining Order and Preliminary Injunction ("memorandum"), which is Doc. # 17 in the Court's Docket, and the filing of the Declaration of Defendant Becker in Opposition to Application for Temporary Restraining Order and Preliminary Injunction ("declaration"), which is Doc. # 18 in the Court's Docket. The face page of Doc. # 18 (declaration) was attached to the front of pages 2 – 5 of Doc. # 17 (memorandum) and filed as Doc. # 18 (declaration), while the face page of Doc. # 17 (memorandum) was attached to the front of pages 2 – 3 of Doc. # 18 (declaration) and filed as Doc. # 17 (memorandum). All references to the said memorandum and declaration made herein assume that this clerical error has been corrected and the face pages have been exchanged, with the memorandum being Doc. # 17 and the declaration being Doc. # 18.

1 [He] did not use any of the equipment of TAP in developing this software." (Becker Decl. at 2.)

### III.

### LEGAL STANDARD GOVERNING PRELIMINARY INJUNCTIONS

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions. The purpose of such injunctions is to preserve the rights and relative positions of the parties, *i.e.*, the *status quo*, until a final judgment issues. *See U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)). Plaintiffs seeking a preliminary injunction in a case involving the public interest must show that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Dominguez v. Schwarzenegger*, 596 F.3d 1087, 1092 (9th Cir. 2010), *petition for cert. filed*, 78 USLW 3581 (Mar. 24, 2010); *see also Winter v. Natural Res. Def. Council, Inc.*, __ U.S. __, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008).

### IV.

### DISCUSSION

Plaintiff seeks a preliminary injunction as follows:

1. Restraining and enjoining Defendant from preventing in any manner TAP Worldwide, its servants, agents or employees, from accessing and using the MyExportDocs software via the Internet website www.myexportdocs.com (the "Software"). In order to comply with this Order, Defendant must restore access to MyExportDocs such that TAP Worldwide may continue to access and use the Software as it did prior to Mr. Becker cutting off access to the Software;

2. Restraining and enjoining Defendant from making use of, transferring, distributing or reproducing the current version of the Software or any derivative versions

1  of the Software, with the exception of those activities specifically permitted by this Order;

3. Restraining and enjoining Defendant from selling, licensing or transferring the domain name www.myexportdocs.com, and from using such domain name, with the exception that Defendant shall be permitted to continue to operate www.myexportdocs.com for the sole purpose of allowing TAP Worldwide to access and use the Software as it previously did in connection with its export operations. All other use of the website is hereby immediately enjoined;

4. Restraining and enjoining Defendant from using transferring, disclosing, copying or in any manner distributing any confidential information of TAP Worldwide obtained by Defendant during his employment with TAP Worldwide, including but not limited to any TAP Worldwide customer or product pricing information; and

5. Requiring Defendant to safeguard and refrain from damaging, altering or modifying the Software and Software source code, including any associated documentation, manuals and the like, and any of Plaintiff's confidential information (*e.g.*, customer lists, customer information, and product pricing information).[2]

### A. Likelihood Of Success On The Merits

"To establish a case of copyright infringement, [Plaintiff] must prove ownership of the copyright, and copying of an expression protected by its copyright." *Johnson Controls, Inc. v. Phoenix Control Sys.*, 886 F.2d 1173, 1175 (9th Cir. 1989). Here, Plaintiff claims its ownership interest as a work made for hire, in which case, "the employer or other person for whom the work was prepared is considered the author . . . ."

---

[2] On July 9, 2010, Plaintiff lodged a new proposed preliminary injunction, which modifies this proposed preliminary injunction by eliminating provision # 5 and replacing it with (1) the requirement that Defendant turn over a complete copy of the Software and Software source code to Plaintiff's counsel, (2) an order allowing Plaintiff access to the Source Code, and (3) the requirement that Defendant turn over Plaintiff's customer information to Plaintiff's counsel. Because this new proposed preliminary injunction was lodged on July 9, 2010, Defendant does not have a reasonable opportunity to respond to it. As such, the Court shall not consider this new proposed preliminary injunction.

17 U.S.C. § 201(b).  To be a "work made for hire," it must be "prepared by an employee within the scope of his or her employment; or . . . specially ordered . . . ."  17 U.S.C. § 101.

> The Act nowhere defines the terms "employee" or "scope of employment."  It is, however, well established that "[w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms."  In the past when Congress has used the term "employee" without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine.  Nothing in the test of the work for hire provisions indicates that Congress used the words "employee" and "employment" to describe anything other than "'the conventional relation of employer and employé.'"
>
> * * *
>
> Establishment of a federal rule of agency, rather than reliance on state agency law, is particularly appropriate here given the act's express objective of creating national, uniform copyright law by broadly preempting state statutory and common-law copyright regulation.

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-40, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) (citations omitted) (alterations in original).

As argued by Plaintiff, The Restatement (Second) of Agency provides for a three-prong test:  (1) is it the kind of work the author is employed to perform? (2) was the work created substantially within authorized work hours and space? and (3) was the work created, at least in part, for the purpose of serving an employer?  Although it appears that Plaintiff has met the third prong, the first and second prongs are not met here.

Defendant was hired as a manager of export operations solely because he had demonstrated an aptitude for and interest in cultivating international business

relationships. Creating software was not within the scope of his job and no one else at the company was tasked to do anything similar. His job was primarily to develop and maintain international export relationships. Defendant identified a need for this software, not just in the operation of Plaintiff's business, but in the business world generally. To that end, he claims to have performed market research. He states (and Plaintiff does not controvert) that he obtained government approvals for his software to submit certain data electronically, and that the government approvals were in his own name, not Plaintiff's. As Plaintiff concedes, Plaintiff's management staff was unaware of the existence of the software until the termination of Defendant's employment. As for the second prong, Defendant asserts without dispute from Plaintiff, that he created the software on his own time, not during his working hours.

District court cases confronted with analogous factual situations have rejected the work-for-hire claim. The court in *Roeslin v. District of Columbia*, 921 F. Supp. 793 (D.D.C. 1995), held that a computer program developed by an employee was not a work made for hire and stated as follows:

> With regard to the first prong, the Court finds that developing computer software is not the kind of work plaintiff was employed to perform. Plaintiff was hired as a labor economist, not as a computer programmer. There is no reference in his job description to computer programming; nor was his supervisor aware of whether plaintiff had any programming skills when he was hired. Plaintiff was hired to improve certain aspects of the CES survey and develop projections based on that survey. He was not hired to create a computer program that would assist the entire office and receive, process, and transmit the survey results.
>
> Defendant makes much of the fact that plaintiff used computers at work, and that defendant allowed plaintiff, during work hours, to learn how to use computers. This, however, does not prove that computer programming was part of plaintiff's job duties or necessary to performing

> his job duties. Many people use computers in the work place, including plaintiff's coworkers, but do not program computers. The two skills are quite different—while many people operate computers, few have the technical ability or training necessary to program them.
>
> * * *
>
> The Court finds that while developing the DC-790 system did help the functioning of the work place, it was not the type of activity in which plaintiff would be reasonable [sic] expected to engage.

*Id.* at 798.

In *Quinn v. City of Detroit*, 988 F. Supp. 1044 (E.D. Mich. 1997), the court held that the employee's creation was not a work made for hire and explained as follows:

> This court is of the opinion that the first factor of the *Restatement* test is absent here. In particular, this court finds that designing computer programs is not the type of work Quinn was hired to perform. Quinn was an attorney and a manager for the City's Law Department. His job description did not require him to create computer software, his employer never requested him to develop software, Quinn had no prior computer programming experience and in fact, the City had its very own computer programming department to do programming of the type Quinn decided on his own to do. Moreover, the computer program developed by Quinn is not specific to the Law Department. It can be used in any law office, claims office or law department.
>
> * * *
>
> Not only is the first *Restatement* factor lacking here, the second is also lacking. It is apparent to this court that Quinn created LMS outside the authorized time and space limits of his job with the City. Quinn designed LMS at home on his own time using a software package that he bought with his own funds. While Quinn may have spent numerous hours **installing,**

> **using and maintaining** LMS while at work, this is not time Quinn spent
> **creating** LMS and thus, not particularly relevant to the analysis.

*Id.* at 1051. *See also PFS Distribution Co. v. Raduechel*, 332 F. Supp. 2d 1236, 1247-48 (S.D. Iowa 2004).

The two cases on which Plaintiff relies are distinguishable. In *Miller v. CP Chems., Inc.*, 808 F. Supp. 1238 (D.S.C. 1993), the employee, while in the position of laboratory supervisor, having the overall responsibility for the operation of the quality control lab, created a computer software program to assist in the calculations for in-process adjustments to one of his employer's commercial products. The software program was product-specific and did not have a general application. Moreover, during the course of Miller's employment, he was requested to computerize the quality control laboratory and to focus as much as possible on complex calculations. *Id.* at 1243. Here, the employer was not even aware that Defendant had created and was using the software, and the software was designed to be of more general applicability. While it was customized for application by Plaintiff by using information from Plaintiff's database, this was hardly the program's sole purpose.

Likewise in *Genzmer v. Public Health Trust of Miami-Dade County*, 219 F. Supp. 2d 1275 (S.D. Fla. 2002), it was found that the employee's job description could be interpreted to include the development of the computer program that was at issue. Moreover, Genzmer apprised his supervisor once he began to develop the software, and his supervisor provided him with guidance and praise.

Based on the foregoing, it appears that Plaintiff has failed to show a likelihood of success on the merits with respect to its claim of copyright infringement.

**B.** **Irreparable Harm In The Absence Of Preliminary Relief**

Plaintiff contends it will be irreparably harmed absent a court order enjoining Defendant from continuing to deprive Plaintiff of access to its software. Defendant, however, has already restored Plaintiff's access to the MyExportDocs software and states

that "[i]n order to maintain the status quo, Becker will stipulate to provision 1 of the TRO until the resolution of this case."

As a result, the irreparable harm asserted by Plaintiff can be resolved by Defendant's offer to stipulate to provision 1 of the TRO.

### C. The Balance Of Equities

In assessing whether plaintiffs have met their burden of establishing that the balance of equities tips in their favor, the district court has a duty to balance the interests of all parties and weigh the damage to each. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). Other than allowing Plaintiff access to use the software program (*i.e.*, provision 1 of the TRO), the remainder of the injunctive relief in question here concerns (1) the proprietary use of the software program and (2) Plaintiff's confidential information. As for the proprietary use of the software program, so long as Plaintiff has access to the program for its use in exporting parts, Plaintiff has no other interest to be protected. However, an injunction affecting Defendant's proprietary use of the software program will prevent him from promoting the software and beginning his proposed business. As for Plaintiff's confidential information, Plaintiff would indeed suffer irreparable harm if Defendant were to disclose Plaintiff's confidential information. On the other hand, Defendant has no interest in having access thereto, except to the extent access is necessary to enable Plaintiff's access to and use of the software program.

Based on the foregoing, the Court finds that preliminary injunctive relief is warranted as follows:

(1) Based on Defendant's offer to stipulate to provision 1 of the TRO, Defendant should be (a) enjoined, pending trial on the merits, from preventing in any manner Plaintiff from accessing and using the software program via the Internet website; and (b) required, pending trial on the merits, to safeguard and refrain from damaging or otherwise modifying the Software and Software source code in such a way as to detrimentally affect Plaintiff's access and use of the Software;

(2)     Based on Plaintiff's likelihood of success on the merits of its claims relating to Defendant's retention of Plaintiff's trade secrets, the probability of irreparable harm and the balance of equities, Defendant should be enjoined from transferring, disclosing, copying or distributing any confidential information of Plaintiff obtained by Defendant during his employment with Plaintiff, including any customer or product pricing information.

(3)     In all other respects, the preliminary injunction is denied.

### D.     Whether An Injunction Is In The Public Interest

When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction. *Stormans*, 586 F.3d at 1138-39.  If, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction. *Id*. at 1139.   In this case the public interest is a neutral factor as the reach of the injunctive relief is limited to the parties.

### E.     No Further Bond Is Necessary

Rule 65(c) permits a court to grant preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Notwithstanding the seemingly mandatory language, "Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks omitted).  A district court may dispense with the filing of a bond if it concludes that there is no realistic likelihood of harm to the defendant from the injunction. *Id*.  The burden of establishing the amount of bond necessary to secure against the wrongful issuance of an injunction rests with the defendant. *Philips Elecs. N. Am. Corp. v. Hope*, 631 F. Supp. 2d 705, 724 n.14 (M.D.N.C. 2009) (citing *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996).

Here, the only injunctive relief granted is as to Plaintiff's confidential information. As such, the potential for harm to Defendant arising from the issuance of the preliminary injunction is not significant. A district court need not order security with respect to potential economic damages that are "speculative at best." *Interlink Int'l Fin. Servs., Inc. v. Block*, 145 F. Supp. 2d 312, 315 (S.D.N.Y. 2001). Based on the record before it, the Court finds that the $15,000 bond imposed to secure the TRO will be sufficient to secure the preliminary injunction.

## V.

## **CONCLUSION**

In light of the foregoing, Plaintiff's Motion for Preliminary Injunction is GRANTED in part and DENIED in part as follows:

Pending trial on the merits, Defendant, and all persons acting under his authority, direction or control:

1. Are hereby enjoined from preventing in any manner TAP Worldwide, its servants, agents or employees, from accessing and using the MyExportDocs software via the Internet website www.myexportdocs.com (the "Software"). In order to comply with this Order, Defendant must restore access to MyExportDocs such that TAP Worldwide may continue to access and use the Software as it did prior to Defendant's cutting off of access to the Software;

2. Are hereby enjoined from using transferring, disclosing, copying or in any manner distributing any confidential information of TAP Worldwide obtained by Defendant during his employment with TAP Worldwide, including but not limited to any TAP Worldwide customer or product pricing information (except to the extent necessary to maintain Plaintiff's access and use of the Software); and

3. Are hereby required to refrain from damaging, altering or modifying the Software, Software source code, associated documentation, manuals, and the like in a manner detrimental to Plaintiff's access and use of the Software, and are required to

safeguard any of Plaintiff's confidential information (including, but not limited to, customer lists, customer information, and product pricing information).

In all other respects, preliminary injunction is DENIED.

Plaintiff shall serve a copy of this Order on Defendant.

IT IS SO ORDERED.

DATED:   July 12, 2010

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE